## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL COX,                              :       No. 4:22cv1824
                                          :
                          Plaintiff       :       (Judge Munley)
                                          :
            v.                            :
                                          :
BERNADETTE MASON, *et al.*,               :
                                          :
                          Defendants      :

## MEMORANDUM

Plaintiff Michael Cox ("Cox") commenced this civil rights action pursuant to

42 U.S.C. § 1983, in the Court of Common Pleas of Berks County, Pennsylvania

on August 24, 2022.  (Doc. 1-3).  Shortly thereafter, defendants removed the

action to the United States District Court for the Eastern District of Pennsylvania.

(Doc. 1).  Defendants subsequently moved to transfer venue to this court

because the events at issue arose at the State Correctional Institution, Mahanoy,

in Frackville, Pennsylvania ("SCI-Mahanoy"), which is located within the territorial

boundaries of the Middle District of Pennsylvania.  (Docs. 3, 5).

The matter is proceeding via an amended complaint.  (Doc. 37). The

remaining defendants are Wellpath, LLC, formerly known as Correct Care

Solutions, LLC ("Wellpath"), Dr. Loscalzo, Dr. Baddick, and Jenna Williams,

Certified Physician Assistant (collectively, the "medical defendants").  Presently

before the Court is the medical defendants' motion (Doc. 39) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion will be granted in part and denied in part.

## I.   **Factual Background & Procedural History**

Cox has been incarcerated at SCI-Mahanoy at all relevant times. According to the amended complaint, he began experiencing numbness in his hands and feet on January 4, 2021. (Doc. 37, at 6-7). Defendant Williams, a physician's assistant in the prison, treated Cox during a sick call on January 4, 2021. (Id.) At this visit, Cox allegedly informed defendant Williams that he believed his situation was serious, and he requested a Magnetic Resonance Imaging ("MRI") test, which he did not undergo. (Id. at 7). Following his January 4, 2021 visit with defendant Williams, Cox maintains that he was treated weekly by unidentified medical staff. (Id. at 6).

On February 18, 2021, when Cox was waiting to be transferred to the emergency room at an outside hospital, he encountered defendant Williams. (Id. at 8). She allegedly stated that Cox was lying about his symptoms. (Id. at 6, 8). Cox therefore contends that defendant Williams failed to properly treat him for approximately 8½ to 9 weeks—from January 4, 2021, to February 18, 2021. (Id. at 8). During these nine weeks, Cox asserts that his condition worsened, and he was unable to walk or feel his legs. (Id.) The amended complaint asserts a claim

2

for deliberate indifference to a serious medical need against defendant Williams. (Id.)

In addition to the Eighth Amendment claim asserted against defendant Williams, Cox alleges that the "medical Department" provided inadequate medical care which caused him to become disabled and, in turn, the department violated the Americans with Disabilities Act ("ADA"). (Id.) Cox avers that, on an unspecified date, he began using a walker or wheelchair to ambulate. (Id. at 6). The medical department allegedly informed Cox that he could not remain on the same housing block with a wheelchair, where he had been housed for almost four years. (Id. at 6, 8).

The medical defendants move to dismiss the amended complaint on the following grounds: (1) Cox failed to state a plausible Eighth Amendment claim against defendant Williams; (2) Cox failed to allege the personal involvement of defendants Baddick and Loscalzo; (3) Cox failed to set forth a viable Monell[1] claim against Wellpath; and (4) Cox failed to state a plausible claim under the ADA. (Doc. 46). Briefing on the motion to dismiss is complete and the motion is ripe for review.

---

[1] Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978).

## II.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the...claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff

4

must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level").  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## III.   Discussion

### A.   Eighth Amendment Claim against defendant Williams

Cox alleges that defendant Williams deliberately denied him medical treatment from January 4, 2021, through February 18, 2021.  Prison officials violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).  To succeed on such a claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'"  Pearson v.

5

Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).

Deliberate indifference occurs when prison officials "intentionally deny[ ] or delay[ ] access to medical care or interfer[e] with the treatment once prescribed." Pearson, 850 F.3d at 534 (quoting Estelle, 429 U.S. at 104-05).  A mere complaint "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid [constitutional] claim of medical mistreatment[.]" Estelle, 429 U.S. at 106.  Moreover, "mere disagreement as to the proper medical treatment does not support a claim of" deliberate indifference. Pearson, 850 F.3d at 535 (internal quotations omitted); Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326 (3rd Cir.1987).  Rather, where there has been medical care, "we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." Id.  As long as a physician exercises professional judgment, his or her behavior does not violate a detainee's constitutional rights.  See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990).

Cox alleges in his amended complaint that following the January 4, 2021, sick call visit with defendant Williams, she denied him medical treatment for approximately nine weeks because she thought he was lying about his symptoms.  As a result of this alleged denial of medical care, Cox alleges that his

6

condition worsened and he lost feeling in his feet and lost the ability to walk.  In seeking to dismiss the claim against Williams, defendants argue that the claim against Williams is subject to dismissal because Cox's "own averments and exhibits refute these allegations."  (Doc. 46, at 10).  However, accepting the allegations as true and drawing all reasonable inferences in favor of Cox, the court finds the allegations sufficiently state an Eighth Amendment deliberate indifference to serious medical needs claim against defendant Williams.  This claim will proceed.

### B.   Claims against Dr. Baddick and Dr. Loscalzo

Individual liability will be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability "cannot be predicated solely on the operation of respondeat superior."  Id.  In other words, defendants in § 1983 civil rights actions "must have personal involvement in the alleged wrongs…shown through allegations of personal direction or of actual knowledge and acquiescence." Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at 1207-08. Acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.  Such allegations,

7

however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. Atkinson, 316 F.3d at 271; Rode, 845 F.2d at 1207-08.

Dr. Baddick and Dr. Loscalzo are physicians at SCI-Mahanoy. (Doc. 37, at 4-5). Cox alleges that Dr. Baddick assessed him as being disabled and that Dr. Loscalzo referred him to the emergency room on February 18, 2021. (Id. at 6). Although the amended complaint includes these tangential allegations, it alleges no facts to support a claim that Dr. Baddick or Dr. Loscalzo were responsible for providing inadequate medical care. The foregoing allegations are insufficient to support the personal involvement of Dr. Baddick or Dr. Loscalzo in conduct that forms the basis for Cox's Eighth Amendment claim. The court will dismiss this claim.

Further, it appears that Cox attempts to hold Dr. Baddick and Dr. Loscalzo liable based on their supervisory roles. (Doc. 37, at 6). He asserts that "Dr. Peter Baddick, [is the] Doctor in charge" and that Dr. Loscalzo is the "referring Practitioner." (Id.) It is well-settled that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat*

8

*superior*. See Rode, 845 F.2d at 1207.  Accordingly, insofar as Cox's claims against Dr. Baddick and Dr. Loscalzo rely on a *respondeat superior* theory of liability, they are likewise entitled to dismissal on this ground.

### C.    Monell Claim against Wellpath

The medical defendants next argue that Wellpath must be dismissed because Cox failed to set forth sufficient allegations under Monell that Wellpath maintained a policy, custom, or practice of deliberate indifference to his serious medical needs.  (Doc. 46, at 14-16).

Wellpath is a private corporation that provides healthcare services to Pennsylvania state inmates under a contract with the Department of Corrections ("DOC").  (See Doc. 37, at 4).  Under § 1983, a private corporation contracted by a prison to provide healthcare for inmates cannot be held liable for Eighth Amendment violations on a *respondeat superior* theory.  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003).  Rather, pursuant to Monell, a private corporation can be held liable for constitutional violations only if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658 (1978) (subjecting municipalities to liability for policies or customs that cause constitutional deprivations); Natale, 318 F.3d at 584 (applying Monell to a private company providing medical services to inmates).  See also Weigher v. Prison

9

Health Servs., 402 F. App'x 668, 669-70 (3d Cir. 2010) (nonprecedential) (noting

that a private corporation providing medical service at a state correctional facility

cannot be held liable under a theory of *respondeat superior* in a § 1983 suit).

Thus, to prevail on his § 1983 claims against Wellpath, Cox must establish

that "there was a relevant [Wellpath] policy or custom, and that the policy caused

the constitutional violation" for which he seeks relief.  See Natale, 318 F.3d at

583-84.  "Policy is made when a 'decisionmaker possess[ing] final authority to

establish municipal policy with respect to the action' issues an official

proclamation, policy, or edict."  Andrews v. City of Phila., 895 F.2d 1469, 1480

(3d Cir.1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)),

superseded in part by statute, Civil Rights Act of 1991, Pub.L. No. 102-166, 105

Stat. 1072, § 102.  A course of conduct not expressly authorized by law becomes

a "custom" when the challenged "practices of state officials [are] so permanent

and well settled" as to virtually constitute law.  Monell, 436 U.S. at 690.  In order

to establish Wellpath's § 1983 liability under either a policy or a custom

argument, "it is incumbent upon [plaintiff] to show that a policymaker is

responsible either for the policy or, through acquiescence, for the custom."

Andrews, 895 F.2d at 1480 (citing Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701,

737 (1989)).  The "policymaker" is the person who "has final, unreviewable

discretion to make a decision or take an action," and who is or is not a policymaker is determined by reference to state law.  Andrews, 895 F.2d at 1481.

Cox's allegations of Monell liability appear to be purely based on vicarious liability and *respondeat superior*.  Aside from listing Wellpath as a defendant in this action, Cox does not set forth any factual allegations against Wellpath.  The amended complaint fails to identify any policymaker effectuating an official policy that was the moving force behind the alleged constitutional violation.  (See Doc. 37).  In fact, the amended complaint fails to reference any policy or procedure that was allegedly violated.  Moreover, there is nothing in the amended complaint that demonstrates that any purported policy was the "moving force behind the injury alleged." Berg v. Cnty. of Allegheny, 219 F.3d 261, 275-76 (3d Cir. 2000) (quoting Bd. of Cnty. Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997)).  Consequently, Cox cannot maintain a Monell claim against Wellpath, and this claim will be dismissed.

### D.   Claim under the ADA

The medical defendants argue that Cox's ADA claim concerning their alleged failure to provide proper medical care is not cognizable against them because they are not proper defendants for a private cause of action under Title II of the ADA.  (Doc. 46, at 16-17).

11

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  Thus, in order "[t]o successfully state a claim under Title II of the ADA, a person 'must demonstrate: (1) he is a qualified individual; (2) with a disability; (3) [who] was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability.'"  Haberle v. Troxell, 885 F.3d 170, 178-79 (3d Cir. 2018) (quoting Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 553 n.32 (3d Cir. 2007)).

Particularly relevant here is the third element—whether Cox has alleged that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity.  Title II of the ADA defines "public entity" as follows: "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority[.]" 42 U.S.C. § 12131(1).

12

While a state prison falls within the statutory definition of a "public entity" as understood by Title II of the ADA, see Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998), a private corporation contracting with that prison does not. See Matthews v. Pennsylvania Dep't of Corr., 613 F. App'x 163, 170 (3d Cir. 2015) (nonprecedential) (concluding, that for purposes of the ADA, "a private corporation is not a public entity merely because it contracts with a public entity to provide some service" (citation and internal quotation marks omitted)). Additionally, an individual defendant, who is sued in his or her individual capacity, is not a "public entity" under Title II of the ADA.  See Bowens v. Wetzel, 674 F. App'x 133, 136 (3d Cir. 2017) (nonprecedential) (affirming district court's dismissal of plaintiff's claim brought under Title II of the ADA, where plaintiff's amended complaint "sued state employees in their individual capacities" and "not any 'public entity' as the statute requires") (quoting 42 U.S.C. § 12132); Matthews, 613 F. App'x at 170 (finding that "Title II of the ADA does not provide for suits against state officers in their individual capacities").

Applying these principles here, the court finds that Cox's ADA claims against the medical defendants fail to state a claim upon which relief can be granted.  The individual medical defendants—defendants Baddick, Loscalzo, and Williams—do not constitute public entities within the meaning of Title II of the ADA and, thus, are not subject to suit.  See Matthews, 613 F. App'x at 169-70 (a

13

contract medical provider of medical services to various state prisons "is not a public entity merely because it contracts with a public entity to provide some service."). Additionally, Wellpath, the private corporation providing medical services to inmates, also does not constitute a public entity, even if Wellpath contracts with the prison to provide such services. See generally City & Cnty. of San Francisco, Calif. v. Sheehan, 575 U.S. 600, 610 (2015) (explaining that "[o]nly public entities are subject to Title II" of the ADA).

Accordingly, the court will grant the medical defendants' motion to dismiss to the extent they argue that Cox's amended complaint fails to state an ADA claim upon which relief can be granted.

## IV.    **Leave to Amend**

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the court must grant Cox leave to amend the complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3rd Cir. 2002). Granting Cox leave to amend would be futile with respect to the claims against defendants Baddick and Loscalzo, the Monell claim against defendant Wellpath, and the ADA claim against all medical defendants, as these claims are both factually and legally flawed. Moreover, Cox is proceeding on an amended complaint and has "had two chances to tell his story." Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483

14

(3d Cir. 2019) (where an inmate plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile.").

## V.    Conclusion

In accordance with the foregoing, the medical defendants' motion (Doc. 39) to dismiss will be granted in part and denied in part.  A separate Order shall issue.

Date: July 23, 2024

_____
JUDGE JULIA K. MUNLEY
United States District Court

15